(Decided 10th March, 1886.)

---

WILLIAM A. DUNNINGTON *vs.* GEORGE W. HUBBARD, Administrator of ELIZABETH HUBBARD, and others.

*Recording of Deed—Signatures to Deed obtained by Fraud—Fraudulent Deed declared Void.*

The enrollment of an instrument of writing, required by law to be recorded, is only *prima facie* evidence of its validity—such evidence may be rebutted.

Where a lawyer, being one of several owners of certain real estate, by fraud and deceit induced the other owners, one of whom was an infant, to execute a deed for the same, under the belief, on their part, that they were signing an entirely different paper, and by false statements induced the grantee to believe that he represented the other owners, and was authorized to sell their interests, such deed will be decreed to be fraudulent and void.

APPEAL from the Circuit Court of Baltimore City.

Elizabeth Hubbard, George W. Hubbard and Mary J. Hubbard, his wife, and Thomas J. Hubbard, an infant under twenty-one years of age, suing by his next friend, filed their bill of complaint against William A. Dunnington. The object of the bill was to set aside a deed which purported to convey to the defendant certain real estate belonging to complainants. It was charged that the signatures to the deed were forgeries and not the genuine signatures of the grantors, and it was averred that the complainants had reason to believe that they were put to the alleged deed by one John William Willson, or by his procurement. The complainants further alleged that although they fully believe that the signatures to said supposed deed are forgeries, yet, if they are in the genuine handwriting of the grantors, that they were affixed to the paper upon the false and fraudulent representation of John William Willson; that the paper was one which they had agreed to sign for the purpose of authorizing the closing of an alley and for no other purpose; and that they signed it in full reliance by them upon the truth of his assertion. The complainants further charge that Willson was acting as the agent of the defendant Dunnington, and that he is responsible for the acts of his agent, but they state that they do not mean to charge that Dunnington had any knowledge of the guilty conduct of Willson. The defendant's answer denied the material allegations of the bill of complaint, and averred that the deed was duly signed, sealed, acknowledged and

delivered, and was in all respects a genuine and authentic instrument.

A good deal of testimony was taken. It was shown that John William Willson was part owner of the property in question. There was a good deal of conflict in the proof on the question of the genuineness of the signatures of the adult complainants. It was shown to the satisfaction of this Court, that the adult complainants never intended to convey away their property; that they never received a cent of the purchase-money; that John William Willson was not their agent; that they signed a paper of some kind, which they thought was an agreement for closing an alley; that they were induced to sign it by the statements and representations of John William Willson, that such was the character of the paper; that after the paper was signed, it was taken possession of by Willson and a justice of the peace. The deed purported to convey the property for $3175, and was dated the twentieth of August, 1880, and the certificate of the justice of the peace to its acknowledgment was of the same date. On the ninth of September of the same year, it was executed by Thomas J. Hubbard and acknowledged before another justice of the peace, the said Thomas was at that time under the age of twenty-one years. He executed it at the instance of Willson, and he testifies that he did not know the nature of the instrument when he signed it. Willson falsely stated to Dunnington, the grantee in this deed, that he was authorized to sell the interest of the other owners in this property. He received from him the greater portion of the purchase-money before the date of the deed, and on the eleventh of September, 1880, he put this deed with the certificates of acknowledgment attached, into the possession of the grantee's agent, and received at that time the balance of the purchase-money, amounting to $1037.50. Willson retained the whole of this money to his own use. He was not authorized to negotiate a sale

by the other owners, and none of them knew that a sale was in contemplation, unless it was known to the infant owner. They did not deal in any way with Dunnington; and the adult owners did not at any time authorize Willson, or any one else, to deliver the deed in their behalf, nor did they know that it had been delivered. They did not wish to dispose of their property and they did not know that any one was attempting to do so.

The death of Elizabeth Hubbard, one of the complainants, having been suggested, and that George W. Hubbard, one of the complainants, had been duly appointed her administrator, he was, upon application, made a party complainant in place of said Elizabeth Hubbard, deceased.

By decree of the Circuit Court, the deed in question was set aside and declared utterly null and void, as against the complainants. From this decree the defendant appealed.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*N. P. Bond,* for the appellant.

*Bernard Carter,* for the appellees.

BRYAN, J., after stating the case, delivered the opinion of the Court.

Some of the facts in this case are involved in considerable obscurity. But it is very certain that a gross fraud has been perpetrated by one John William Willson, an attorney-at-law. The details of the transaction were carried out with singular skill and audacity.

The deed in question was recorded in the manner required by law, and it must therefore be held valid, unless it is overthrown by competent proof. "Where an instrument of writing is required by law to be recorded, the

enrolment of it is evidence of all circumstances necessary to give it validity. But this evidence is not conclusive; it is only *prima facie*, and like all *prima facie* evidence may be rebutted. To give it a conclusive effect might be ruinous to the community; an enrolment however obtained would exclude all inquiry; it would be a shield and protection to fraud, forgery and deceit." *Crawford vs. State*, 6 *Harris and Johnson*, 234. One of the supposed grantors is under the age of twenty-one years, and the instrument is, of course, void as to him. We are satisfied from the proof that the other supposed grantors never consciously signed the deed. If the signatures are in their genuine handwriting, they were obtained by fraud and deceit practiced by Willson, and under the belief on their part, that they were signing a totally different paper. They never received a cent for their property; they never intended to sell it, they never knowingly signed a deed of conveyance for it; and certainly nothing was further from their thoughts than to authorize the delivery of this deed by Willson, or by any one else. Under these circumstances, there was no delivery of the deed. Let us quote a passage from *Sheppard's Touchstone:* "The fifth thing required in every well made deed, is that there be a delivery of it. * * * * And though the party to whom it is made take it to himself, or happen to get it into his hands, yet will it do him no good, nor him that made it any hurt, until it be delivered. And a deed may be delivered by the party himself that doth make it, or by any other by his appointment or authority precedent, or assent or agreement subsequent, for *omnis ratihabitio mandato æquiparatur.* And when it is delivered by another that hath a good authority, and doth pursue it, it is as good a deed, as if it were delivered by the party himself; but if he do not pursue his authority, then it is otherwise. And, therefore, if a deed, or the contents thereof be read or declared to a man that is to seal it; and he (being illit-

erate,) doth deliver it to a stranger, and bid him examine it; and if it be so as it was read to him, then to deliver it as his deed, otherwise to re-deliver it to him again that made it; in this case if the deed be, in truth, otherwise than it was read, and, yet, notwithstanding, he, to whom it was delivered, doth deliver it to him to whom it was made, this delivery shall not avail; neither is the deed by 'this delivery become a good deed." Chapter 4, page 57.

There cannot be the slightest imputation against the grantee. He fairly paid his money, and honestly thought that he had purchased this property. Willson, being one of the owners, by false statements, induced Dunnington (the grantee,) to believe that he represented the other owners, and was authorized to sell their interests. After he had induced Dunnington to advance to him the greater portion of the purchase money, he delivered to him this fraudulent deed, which had every indication of a genuine instrument, and he received the remainder of the price of the property. Dunnington became the victim of a man in whom he placed an unmerited confidence. The appellees (with the exception of the infant,) had no agency in misleading him. Dunnington dealt exclusively with Willson without any communication whatever with the other owners of the property, and without any knowledge on their part of his proceedings. He paid Willson nearly one-half of the purchase-money before the date of the deed, and by far the greater portion of it before he received it. The decree must be affirmed.

*Decree affirmed, with costs.*

(Decided 10th March, 1886.)